Hillsborough,
No. 5588.

EDGAR PEPIN *v.* MANCHESTER *& a.*

Argued June 6, 1967.
Decided July 18, 1967.

*Manning & Sullivan* and *William D. Tribble* for the plaintiff, filed no brief.

*J. Francis Roche,* city solicitor ( by brief and orally ), for the city of Manchester.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *William S. Orcutt ( Mr. Orcutt* orally ), for Amoskeag Industries, Inc.

GRIMES, J. When in 1936-37 the city constructed the Bridge Street bridge ( which it named the Notre Dame Bridge ), it shared with Amoskeag Industries, Inc. the cost of constructing a flight of steps on the north side of the bridge running from the surface of the bridge to the mill yard below. This was done to provide easy access for persons who were employed in the various

industries in the mill yard. The Notre, Dame Bridge runs generally east and west and crosses the Merrimack River and also a canal which runs generally north and south in the mill yard along what is known now as North Commercial Street which at the time of the alleged accident was a public highway. The land upon which the foot of the stairway rests was part of a tract owned by Amoskeag Industries, Inc. which ran westerly below the north side of the Notre Dame Bridge to the canal. Its shape is irregular but it is 121.55 feet long, and 11.90 feet wide for about 83 feet of its easterly end and then widens to about 26 feet at the canal on the westerly end. The footbridge in question runs from the westerly end of this strip of land across the canal to North Commercial Street and prior to March 31, 1947, was owned by Amoskeag Industries, Inc. Persons who used the steps off Notre Dame Bridge used the strip of land above described and the footbridge to reach North Commercial Street and the various industries where they were employed.

The land including the footbridge had previously been the subject of consideration by the board of mayor and aldermen from 1942 to 1945 in connection with petitions by Amoskeag Industries, Inc., for the layout of streets in and about the mill yard. See *Amoskeag Industries* v. *Manchester,* 93 N. H. 335.

By letter dated December 24, 1946, John R. McLane, attorney for Amoskeag Industries, wrote to the board of mayor and aldermen as follows: " I am writing on behalf of Amoskeag Industries, Inc. to suggest that it convey to the City either for the consideration of $1.00, or as a gift, a small tract of land in the Amoskeag Yard adjoining the Bridge Street Bridge. The tract includes the steps leading off the North side of the bridge down to the yard used by a great many employees of Arms Textile Company and perhaps other plants located South of the bridge. The City title at present only runs to the North line of the bridge so that the steps are built on this land which is now owned by Amoskeag Industries, Inc.

" When the bridge was built both the City and Amoskeag Industries, Inc. thought it desirable that this means of access from the bridge to Amoskeag Yard be provided and when the steps were built the City and Amoskeag Industries, Inc. each paid one-half the cost. Two years ago an arrangement was made by which the City agrees to protect the steps from ice and snow in the winter and that arrangement still continues. Today Amoskeag

Industries, Inc. has long since disposed of all its holdings North of the bridge or anywhere that the stairway would be of use to it or its tenants. "

This matter was referred to the committee on finance which recommended that the offer be accepted. This recommendation was adopted by the board of mayor and aldermen January 21, 1947. On February 3, 1947 the finance commission approved the purchase as recommended by the board of mayor and aldermen.

A deed dated March 31, 1947, acknowledged April 8, 1947, was recorded by the city solicitor on April 19, 1947. This deed described the above tract by metes and bounds and also contained the following paragraph:

" Together with the grantor's right of way Westerly from said premises over the lower canal to North Commercial Street; together with the bridge structure extending over said Lower Canal along said right of way. "

The letter offering the " small tract of land " and the action of the board of mayor and aldermen with respect to it are ambiguous as to the amount of land involved but there is no mention of the bridge structure except in the deed itself. The language of the deed, however, is so clear and unambiguous that we need not resort to any rules of construction to determine that the deed purports to convey the bridge structure. The only real question, therefore, is whether there has been an acceptance of the deed by the city.

As a general rule, the assent of the grantee to a grant which is beneficial to him will be presumed. *Peavey* v. *Tilton*, 18 N. H. 151; *Boody* v. *Davis*, 20 N. H. 140. It has been held, however, that since a grant to a city is not necessarily beneficial to it, acceptance will not be presumed. *Pitkins* v. *Montpelier*, 85 Vt. 468; 23 Am. Jur. 2d, Deeds, *s*. 133.

Acceptance by a public grantee need not be express or formal, but may be found from its acts and conduct with respect to the deed and the property included therein. Annot. 74 A.L.R. 2d 992, 1002.

There was evidence that it was the general practice in Manchester to have deeds to the city checked by the highway department which then turned them over to the city solicitor. The evidence shows that the city solicitor recorded the deed in question and that after recording, it was returned to him and then filed with the city clerk where it was at the time of trial. For the fifteen

years prior to the accident the deed was in the possession of the city and on record as notice to the world of the conveyance. There was no evidence that during that period the city made any effort to reject the grant.

On the other hand, it is findable that during this time the city cleared the footbridge of snow and ice and kept it sanded and that at least after the accident it made repairs to the surface. The evidence also shows that the bridge has been in constant use by the public as a means of access to North Commercial Street from the Notre Dame Bridge. This evidence justified the Trial Court's finding that title to the footbridge was in the city at the time of the accident of March 13, 1962, and the granting of Amoskeag Industries, Inc.'s requests for findings and the denial of the city's requests for findings to which exceptions were taken. *Canning* v. *Pinkham*, 1 N. H. 353; Annot. 74 A.L.R. 2d 992; 23 Am. Jur. 2d, Deeds *ss*. 128-131. See *Newbury* v. *Parsons*, 103 N. H. 96.

*State* v. *Atherton*, 16 N. H. 203, quoted in the city's brief, involves not the acceptance of a deed which had been the subject matter of prior negotiations, but the acceptance of a dedication of a highway without a deed. Even that case, however, recognizes that acceptance may be inferred from the circumstances.

We have examined the other exceptions of the city of Manchester, including those relating to the admission and exclusion of evidence, and find no error in the rulings of the Trial Court.

*Exceptions overruled.*

All concurred.